UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                          )
                                )
Donald Eugene Cranford,         )     Case No. 12-10724C-13G
                                )
                Debtor.         )
                                )

## OPINION AND ORDER

This case came before the court on October 9, 2012, for hearing on an objection by 21st Mortgage Corporation to the valuation of a 1999 Horton mobile home contained in the Debtor's chapter 13 plan of reorganization. James L. Tennant appeared as attorney for the Debtor, Craig S. Haskell appeared on behalf of 21st Mortgage Corporation ("21st Mortgage") and Anita Jo Kinlaw Troxler appeared as chapter 13 trustee.

The mobile home at issue is subject to a security interest and lien that secures indebtedness owed to 21st Mortgage. According to the proof of claim filed by 21st Mortgage, the amount of the indebtedness secured by the lien on the mobile home is $53,807.61. The Debtor valued the mobile home at $10,000 in his plan of reorganization and proposed to treat 21st Mortgage as having a secured claim in the amount of $10,000, with the balance of the 21st Mortgage indebtedness to be treated as unsecured. 21st Mortgage filed a timely objection to the Debtor's valuation of the mobile home. The issue before the court is the value of the mobile home for purposes of the plan treatment proposed by the Debtor.

At the hearing, the Debtor conceded that the NADA[1] value of the mobile home was greater than $10,000 and proposed to increase his valuation to $26,586, apparently consisting of the NADA value of $26,086 for a 1999 Horton Summit 27 x 56 mobile home plus $500 for "basic options."  21st Mortgage argues that the value from the NADA guide is too low for the Debtor's mobile home based upon the condition of the mobile home and the additional features with which the mobile home is equipped, and offered an appraisal witness and report in support of its position.

The evidence offered by 21st Mortgage was presented by a witness found to be an expert in the valuation of mobile homes and was based upon the appraisal witness having personally inspected the Debtor's mobile home.  The witness utilized a cost approach to his appraisal.  He started with the value in the NADA guide for the make, model and year of the mobile home owned by the Debtor. According to the evidence, this value is a base structure value for a mobile home in average condition and with standard components such as metal roof and siding, standard bath and kitchen modules, a certain amount and grade of carpet, a standard furnace and heating system, and a standard size stove and refrigerator. According to the witness, the base structure value of a mobile home should be increased for any additional features it has and reduced for any missing component items.  The witness testified that there

---

[1]NADA Manufactured Housing Cost Guide.

- 2 -

were components and accessories found at the Debtor's mobile home that represented upgrades and which were a basis for increasing the base structure value found in the NADA Guide. The components included by the witness are itemized on page four of his report and include house type roofing and siding instead of the standard metal surface, storm windows, sliding glass door, 2 full baths, fiberglass shower stall and tub, upgraded refrigerator and stove, a dishwasher, a 40-gallon water heater, a built-in fireplace, smoke detectors, an intercom system and certain upgrades to the heating and air conditioning system. The accessories included by the witness are listed on page five of his report and include a 3 ton heat pump, skirting located around the bottom of the home and wooden steps located at the entrances of the mobile home. Deductions from the base structure value of $432 and $980 were made for items that were missing (the axle and wheels for the mobile home) and a deduction of $99 was made for repairs that were needed. Taking into account his adjustments to the base structure value found in the NADA tables, the appraisal witness expressed an opinion of $36,931 as the fair market value of the Debtor's mobile home.

The court finds the witness's valuation methodology appropriate for this case. The witness's methodology valued the Debtor's particular mobile home and therefore, a discount should not be applied to the value. See In re Kellmorgen, No. 11-10904

- 3 -

2012 WL 195200, at *4 (Bankr. D. Kan. Jan. 20, 2012). The court accepts the witness's valuation after making the following adjustments.  First, the witness admitted at the hearing that he had mistakenly counted the intercom radio in the mobile home twice. The witness valued the intercom radio at both $121 and $261. Because the burden is on 21st Mortgage to prove the extent of its security interest and it did not evidence that the lower value should be subtracted, the higher value of $261 should be subtracted. See In re Heritage Highgate, Inc., 679 F.3d 132, 140 n.4 (3d Cir. 2012); In re Buick, Inc., 126 B.R. 840, 851 (Bankr. E.D. Pa. 1991) ("Throughout the [Bankruptcy] Code, the burden of proving the 'validity, priority, and extent' of security interests lies upon the creditors asserting such interests."). Additionally, the witness erroneously added the cost of repairs back into his value. If the repairs are necessary to bring the mobile home to saleable condition, then the repairs should be subtracted from the value. See In re Coleman, 373 B.R. 907, 913 (Bankr. W.D. Mo. 2007). Although courts have failed to subtract the value of repairs when debtors fail to quantify the cost of repairs, see id. at 913-14, here, 21st Mortgage has quantified the amount of repairs for the Debtor as $99.00. Therefore, $360 should be subtracted from the witness's value for these items.

One final adjustment related to the reach of 21st Mortgage's security interest is required.  The valuation of 21st Mortgage's

collateral may include only items which are encompassed by its security interest. <u>In re Young</u>, 367 B.R. 183, 191 (Bankr. N.D. Cal. 2007); <u>see</u> <u>Assocs. Commercial Corp. v. Rash</u>, 520 U.S. 953, 965 n.6, 117 S. Ct. 1879, 1886, 138 L. E. 2d 148 (1997). 21st Mortgage's security agreement includes an after-acquired property clause which purports to encumber "all parts, accessories, repairs, improvements, and accessions to the Manufactured Home and all proceeds, products and benefits from it." The efficacy of this provision is governed by North Carolina law. Pursuant to North Carolina's version of Article 9, an after-acquired property clause can create a security interest in after-acquired collateral. N.C. Gen. Stat. § 25-9-204(a). However, the reach of an after-acquired property clause is limited when it seeks to extend a security interest to consumer goods. Later acquired consumer goods will only attach to the creditor's security interest when they are accessions or the debtor acquired rights to the goods within ten days after the secured party provides value. N.C. Gen. Stat. § 25-9-204(b)(1); <u>Anderson v. S. Disc. Co.</u>, 582 F.2d 883, 885 (4th Cir. 1978). "'Consumer goods' means goods that are used for or bought for use primarily for personal, family, or household purposes." N.C. Gen. Stat. § 25-9-102(24). Goods are defined as "all things that are moveable when a security interest attaches." N.C. Gen. Stat. § 25-9-102(44). The heat pump and the wooden steps referred to in the appraisal are goods and more particularly, are consumer goods.

Hence, the after-acquired property clause will operate to attach 21st Century's security interest to the heat pump and the wooden steps only if the Debtor acquired rights in them within ten days of receiving value from the creditor or if the heat pump and steps are accessions.

When "materials of one person are united to the materials of another by labor, forming a joint product, the owner of the principal materials will acquire the right of property in the whole by right of accession." Twin City Motor Co. v. Rouzer Motor Co., 148 S.E. 461, 463 (N.C. 1929). Accessions are part of a secured party's collateral. Id. In Goodrich Silvertown Stores v. Caesar, 197 S.E. 698, 700 (N.C. 1938), the North Carolina Supreme Court created a two-part test for whether an accession has occurred: "The doctrine of accession is inapplicable in cases where personal property is placed upon other personal property if the property so placed had not become an integral part of the property to which it was attached and could be conveniently detached." Applying this test, the court found that tires mounted on an automobile were not accessions because they were easily removed without damaging the automobile and they had not become an integral part of the automobile. Id. In a more recent case analyzing accessions, a drill engine installed in a drill machine was found to not be an accession because it could be removed without damaging the machine and it "was a detachable component of the drill machine and

therefore had not become a commingled, integral part of the machine." <u>First-Citizens Bank & Trust Co. v. Four Oaks Bank & Trust Co.</u>, 576 S.E.2d 722, 726 (N.C. Ct. App. 2003).

Neither the heat pump nor the wooden steps may be treated as accessions to the mobile home. The heat pump and the steps can be detached without damaging the mobile home and have not become "a commingled, integral part of the [mobile home]." Thus, under the two-part test of <u>Goodrich</u>, neither the steps nor the heat pump are accessions, nor is there any evidence before the court that the Debtor acquired the heat pump or the steps within ten days of 21st Mortgage providing the loan secured by the mobile home. Therefore, 21st Mortgage has not sustained its burden of establishing that its security interest extends to the heat pump and the steps. <u>See</u> <u>In re Harris</u>, 1977 WL 25605 (Bankr. N.D. Ga. July 28, 1977). This means that the values included in the appraisal for the heat pump and steps must be deducted from the appraised value.[2] The appraiser used values of $627 and $738 for the two sets of steps and $1,665 for the heat pump. These amounts plus the $360 adjustment previously discussed result in a $3,390 reduction in the

---

[2]The fact that 21st Mortgage's after-acquired property clause describes other types of property such as accessories does not alter this conclusion because the limitation contained in section 25-9-204(b) applies regardless of the type of consumer goods described in the after-acquired property clause. <u>See</u> <u>In re Dykes</u>, 1976 WL 23642 (Bankr. E.D. Tenn. July 20, 1976). Thus, even if the steps or the heat pump could be classified as, for example, an accessory, 21st Mortgage's security interest still would not attach because neither of the requirements under section 25-9-204(b) has been established.

appraiser's $36,931 valuation. With these adjustments, the court finds that the value of the Debtor's mobile home is $33,541.

It is, therefore, ORDERED that 21st Mortgage's objection to confirmation of the Debtor's proposed plan is sustained without prejudice to the Debtor submitting a modified plan within thirty days from the date of this order.

This __27th__ day of November, 2012.

_William L. Stocks_
WILLIAM L. STOCKS
United States Bankruptcy Judge

- 8 -

PARTIES IN INTEREST

James L. Tennant, Esq.
P.O. Box 4585
Archdale, NC 27263

Craig S. Haskell, Esq.
5540 Centerview Drive, Suite 416
Raleigh, NC 27606

Anita Jo Troxler, Trustee